UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHARMELLA KING MARKS,

      Petitioner,

    v.

SCOTT A. CICIRELLO, in his official
capacity as Warden of the Allegany
County Jail, et. al,

      Respondents.

**DECISION AND ORDER**

1:26-CV-00756-EAW

---

Petitioner Sharmella King Marks ("Petitioner") is a civil immigration detainee alleging that she is being detained in United States Immigration and Customs Enforcement ("ICE") custody pending removal proceedings in violation of the United States Constitution, the Administrative Procedure Act, and the law. (Dkt. 1). She seeks relief under 28 U.S.C. § 2241. (*Id*.). She is being held in ICE custody at the Allegany County Jail. (*Id.* at ¶ 1).

**BACKGROUND**

Petitioner is detained pursuant to 8 U.S.C. § 1231, which governs detention of individuals subject to a final order of removal.[1] *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021). Petitioner, a native and citizen of Guyana, arrived in the United States on

---

[1] Petitioner notes that the order of removal was instituted *in abstentia* and challenges its constitutionality but does not dispute the existence of the final order of removal. (*See* Dkt. 1 at ¶¶ 1, 12).

October 20, 2020, with a B-1/B-2 visa. (Dkt. 1 at ¶ 2). She married a United States citizen on October 1, 2023, and later separated from her husband due to alleged abuse. (*Id.* at ¶ 6). On October 24, 2025, Petitioner gave birth to a son. (Dkt. 1-3 at 3). Petitioner filed an I- 360 Petition for Special Immigrant pursuant to the Violence Against Women Act on December 5, 2025. (*Id.* at ¶ 9). Removal proceedings were commenced in Immigration Court on December 10, 2025.

On January 8, 2026, an immigration judge ("IJ") ordered Petitioner removed to Guyana *in abstentia* following her failure to appear at her removal hearing, which the IJ deemed to constitute an abandonment of any pending applications for relief or protection from removal. (Dkt. 1 at ¶ 4; Dkt. 1-4). Petitioner filed a motion to reopen proceedings and rescind the *in abstentia* order of removal on the grounds that she did not receive proper notice of the hearing and was entitled to relief pursuant to her status under VAWA. (Dkt. 1 at ¶ 13; Dkt. 1-5). Petitioner's motion was denied by the IJ on February 13, 2026. (Dkt. 1 at ¶ 14; Dkt. 1-6). Petitioner filed an appeal of the denial of her motion to reopen and for a stay of removal with the Board of Immigration Appeals on March 9, 2026. (Dkt. 1 at ¶ 16). That appeal remains pending.

Petitioner was detained on February 3, 2026, as she was on her way to a family court appearance in Schenectady, New York. (Dkt. 1 at ¶ 10). Petitioner, who has no criminal history (*id.* at ¶ 3), is currently housed with the general population at the Allegany County Jail (*i.e.*, with individuals charged or convicted of crimes). She alleges that she has experienced significant medical issues while in custody that are not being addressed by Respondents and filed the instant habeas petition on April 16, 2026. (Dkt. 1). The Court

issued a Text Order on April 17, 2026, temporarily enjoining Respondents from transferring Petitioner outside the Western District of New York and the United States pending a resolution of the petition and scheduled a telephone conference for April 21, 2026. (Dkt. 3). On the same day, Respondents advised that Petitioner was scheduled to be removed on April 21, 2026, and asked the Court to lift the stay of transfer or removal, arguing that the Court lacks jurisdiction to stay the execution of a removal order pursuant to 8 U.S.C. § 1252(g). (Dkt. 5). The Court advised Respondents that in order to meaningfully consider their request, it required additional information regarding the status of Petitioner's removal proceedings and also granted leave to Petitioner to submit any legal authority that would support an argument that the stay should not be lifted. (Dkt. 6). The Court rescheduled the telephone conference for April 20, 2026. (*Id.*). On April 20, 2026, the Court conducted the telephone conference with the parties and following the conference, scheduled an evidentiary hearing on Petitioner's deliberate indifference claim. (Dkt. 16).

On April 28, 2026, the Court held the evidentiary hearing. Respondents offered Petitioner's medical records from her detention in the Niagara County Jail and Allegany County Jail into evidence, which the Court filed under seal. (Dkt. 21). In addition to the submission of Petitioner's medical records, the Court heard testimony from Petitioner and from Petitioner's medical expert, Dr. Yousuf Sayyed, M.D. (Dkt. 30). Respondents did not call any witnesses. At the conclusion of the hearing, the Court reserved decision and directed the parties to submit additional briefing in support of their respective positions, which they both have done.

**DISCUSSION**

A.    Jurisdiction

When an immigration judge enters a final order of removal against an individual, "the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001); *see also Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("[d]uring the [90-day] removal period" under § 1231, "the Attorney General shall detain the alien"), *superseded by statute on other grounds*, 8 U.S.C. § 1252(a)(4). The removal period begins on the latest of: (1) the date the removal order becomes administratively final; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) the date the alien is released from detention or confinement, unless such detention or confinement is the result of an immigration process.  8 U.S.C. § 1231(a)(1)(B).

"Section 1252(g) prohibits courts from "hear[ing] any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General [or Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Ozturk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (quoting 8 U.S.C. § 1252(g)).  But "[t]his bar on judicial review is thus cabined 'to three discrete actions': a decision to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Id.* at 396-97 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm*, 525 U.S. 471, 482 (1999)) (citation modified).  In *Ozturk*, the Second Circuit confirmed

that an independent constitutional challenge to detention is not necessarily foreclosed by the Court's lack of jurisdiction to resolve a challenge to removal.  *Id*. at 400-01.

Based on this authority, the Court concludes and Respondents do not dispute (*see* Dkt. 22 at ¶ 1) that it possesses jurisdiction to resolve Petitioner's Fifth Amendment challenge to her detention.  The Court further concludes that the temporary stay imposed was necessary in order to permit a meaningful resolution of the constitutional questions presented.  *Rahman v. Catletti*, No. 26 CIV. 3054 (PAE), 2026 WL 1008326, at *1 (S.D.N.Y. Apr. 14, 2026) ("To preserve the Court's jurisdiction pending a ruling on the petition, petitioner shall not be removed from the United States unless and until the Court orders otherwise.").

B.    Fifth Amendment Claims

As noted, Petitioner's challenge arises under the Fifth Amendment.[2]  In order to sustain a Fifth Amendment deliberate indifference claim, a detainee must show "(1) the existence of a 'serious medical need,' and (2) that Respondents acted with deliberate

---

[2]    Notwithstanding that the petition frames Petitioner's claim as an Eighth Amendment challenge, the Court addresses it under the Fifth Amendment, which it confirmed and was not disputed by the parties at the hearing.  *See De Oliveira v. United States Dep't of Homeland Sec.*, No. 25-CV-0942-MAV, 2026 WL 787890, at *3 (W.D.N.Y. Mar. 20, 2026) ("[The Fifth Amendment protects federal pretrial detainees from deliberate indifference to their serious medical needs."); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 423 (S.D.N.Y. 2025) ("The Fifth Amendment of the Constitution guarantees that civil detainees, including noncitizen detainees, may not be subject to conditions of confinement or denial of medical care that 'amount to punishment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979))); *Coronel v. Decker*, 449 F. Supp. 3d 274, 282 (S.D.N.Y. 2020) ("The Eighth Amendment, however, does not apply to civil detainees. . . .  For federal civil detainees, those rights are cognized under the Fifth Amendment's Due Process Clause.  The Due Process Clause thus prohibits the federal government from being deliberately indifferent to the medical needs of civil detainees." (citation modified)).

indifference to such need." *Graterol Ruiz v. Trump*, No. 2:26-CV-00012, 2026 WL 483182, at *3 (D. Vt. Feb. 20, 2026) (citation modified); *Quintero v. Francis*, No. 25-CV-10107 (MKV), 2026 WL 265921, at *7 (S.D.N.Y. Feb. 2, 2026) ("[T]o prevail on [a deliberate indifference] claim, Petitioner must show (1) that she had serious medical needs and (2) that the Government acted with deliberate indifference to such needs." (citation modified)).

"The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain," and to establish deliberate indifference, "a detainee must prove 'that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to [the detainee's] health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Quintero*, 2026 WL 265921 at *7 (quoting *Charles v. Orange Cnty.*, 925 F.3d 73, 82, 85 (2d Cir. 2019) (citation modified)). While "mere negligence" or medical malpractice does not suffice, the conduct "may rise to the level of deliberate indifference when it involves culpable recklessness, *i.e.*, an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Charles*, 925 F.3d at 87 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)).

At the evidentiary hearing, Petitioner presented sufficient evidence demonstrating by a preponderance of the evidence, *see McDonald v. Feeley*, 535 F. Supp. 3d 128, 135 (W.D.N.Y. 2021) (citing standard under § 2241), that she has a sufficiently serious medical condition presenting a condition of urgency that could result in death, degeneration, or extreme pain. She testified to experiencing chest pain, elevated blood pressure, cramping, back pain, leg pain, and coughing up blood, and also reported a family history of cardiac

issues.  Dr. Sayyed's review of the medical records corroborated the seriousness of Petitioner's medical condition.

In addition, the medical records, Petitioner's testimony, and Dr. Sayyed's opinion (the only expert evidence in the record before the Court) support a conclusion that ICE officials were deliberately indifferent to a substantial risk to Petitioner's health.  Dr. Sayyed testified that based on a review of the medical evidence, he could not rule out a pulmonary embolism without conducting lab work, blood work, or imaging, and that Petitioner's condition (including abnormal EKG results), warranted prompt referral to a cardiologist. He noted that the passage of time can serve to negate the efficacy of certain testing, including blood work.  He also expressly opined that ICE officials' March 25, 2026 decision to reject a recommended referral for cardiac ultrasound and cardiology referral (*see* Dkt. 21 at 34) was unreasonable based on Petitioner's medical and EKG reports as of that date and posed a substantial risk to Petitioner's health.  Dr. Sayyed further opined that Respondents' ultimate decision to refer her for a cardiology appointment that was not scheduled until June 30, 2026 (Dkt. 21 at 36, 59) was similarly unreasonable and posed a substantial risk to her health.

Respondents contend that the medical records document a litany of medical tests, examinations, medication, and treatment from multiple providers at the Allegany County Jail, and this undercuts Petitioner's claims of deliberate indifference.  (Dkt. 22 at ¶ 12). While true that Petitioner has received frequent interaction with the Jail's medical providers (*i.e.*, third parties who do not report to Respondents), the evidence also establishes that Respondents' medical providers rejected the request for a cardiac ultrasound and

cardiology referral.  And then, when a cardiology referral was ultimately scheduled, it was put off for months.  This constitutes a violation of Petitioner's Fifth Amendment rights.

C.    Remedy

Petitioner's immediate release is the obvious remedy for the proven violation.  But as discussed at the evidentiary hearing, in addition to immediate release, Petitioner also seeks a permanent injunction that would preclude any re-detention until the Government is prepared to put her on a flight to Guyana.  However, Petitioner has not supported this request with ample legal authority.  As noted, this Court does not have jurisdiction to impede Respondents' efforts to remove Petitioner and detention in connection with such removal is lawful.  *Santamaria Turcios v. Mullin*, No. 1:25-CV-8150-MKV, 2026 WL 1180124, at *10 (S.D.N.Y. Apr. 30, 2026) ("By statute, under Section 1231(a), ICE has authority to detain an alien who is subject to a final order of removal."); *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) ("Respondents are empowered to remove Petitioner at their discretion.").  And while the Court did conclude it was appropriate to stay removal pending resolution of the constitutional questions raised in the petition arising from Petitioner's medical needs, *see, e.g., Leuthavone v. Salisbury*, No. 97 Civ. 556, 2025 WL 1135588, at *2 (D.R.I. Apr. 17, 2025) (granting a stay of removal "to maintain the status quo and preserve the Court's ability to adjudicate the habeas petition"); *Khalil v. Joyce*, No. 25 Civ. 1935, 2025 WL 750599, at *1 (S.D.N.Y. Mar. 10, 2025) ("To preserve the Court's jurisdiction pending a ruling on the petition, Petitioner shall not be removed from the United States unless and until the Court orders otherwise."), upon Petitioner's release from detention, those matters are deemed resolved and Petitioner has

provided no authority that would permit this Court to continue to impose such a permanent restraint on her removal once the matters in the petition have been ruled upon.[3] Accordingly, Petitioner's request that the Court enter a permanent injunction to enjoin Petitioner's re-detention is denied.  However, in order for the relief granted herein to be effectuated, the Court directs that the stay in this case will remain in place until May 18, 2026.  This will hopefully allow Petitioner to obtain necessary medical care prompted by the unconstitutional denial of such at the hands of Respondents.

## CONCLUSION

For the foregoing reasons, the Court finds that Petitioner has established a Fifth Amendment violation based on Respondents' deliberate indifference to her serious medical need, necessitating Petitioner's release from custody.  Although the Court cannot grant a stay of removal as requested by Petitioner now that the allegations in the petition have been resolved, the Court hereby orders that the previously-entered temporary stay (Dkt. 3) shall

---

[3]     Nor is the Court persuaded by Petitioner's alternative argument that ICE Directive 11032.4, *Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals* (July 1, 2021), https://www.ice.gov/directive-identification-and-monitoring-pregnant-postpartum-or-nursing-individuals justifies her release or the imposition of a permanent injunction.  As an initial matter, because Petitioner is subject to a final order of removal, it is not clear that ICE Directive 11032.4 would direct her release as she argues.  *See Lopera Ramirez v. Harper*, No. CV 26-386 SEC P, 2026 WL 1067923, at *2 (W.D. La. Apr. 20, 2026) (holding that petitioner's detention pursuant to a final order of removal was required, and such "detention is consistent with ICE Directive 11032.4, and this Court cannot order Petitioner's release"); ICE Directive 11032.4 ("This Directive does not address whether removal proceedings should be initiated (i.e., the issuance of a charging document) against such individuals.").  Further, contrary to Petitioner's argument that the use of handcuffs multiple times constitutes "flagrant violations" of this ICE directive, the portion of the directive regarding restraints is limited to "individuals who are pregnant or in postdelivery recouperation" and is not extended to all postpartum detainees.

remain in place until May 18, 2026.  In other words, as of May 19, 2026, the stay is hereby vacated and the Clerk of Court is directed to close this case at that point without further order of the Court.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        May 6, 2026
              Rochester, New York

- 10 -